IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-104 |
| | ) | |
| MARVIN HARRIS, | ) | (PHILLIPS/GUYTON) |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the Court on the defendant's Motions to Suppress [Docs. 22 and 24], filed on March 25, 2009. These motions were referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). The Court held an evidentiary hearing on April 27, 2009. Assistant United States Attorney Cynthia F. Davidson represented the government. Attorney Ronald C. Newcomb appeared on behalf of the defendant, who was also present. The Court took the evidence, the arguments, and the parties' briefs under advisement on April 28, 2009.

### I. POSITIONS OF THE PARTIES

The defendant stands indicted [Doc. 19] for distribution of crack cocaine on April 7, 2008 (Count 1), distribution of crack cocaine on April 9, 2008 (Count 2), being a felon in possession of firearms and ammunition on August 4, 2008 (Count 3), maintaining a residence for the purpose of distributing crack cocaine on August 4, 2008 (Count 4), and possession of a firearm

1

in furtherance of a drug trafficking crime also on August 4, 2008 (Count 5). The defendant asks [Doc. 24] for the suppression of all evidence seized during the execution of a search warrant at the defendant's residence on August 4, 2008. He argues that the issuing judge lacked probable cause to issue the search warrant because the confidential informants mentioned in the affidavit were not reliable. He asserts that the informants alleged that a high volume of drug activity was occurring at his residence, but the search only revealed a single rock of crack cocaine. The defendant also argues [Doc. 22] that if he is acquitted of Counts 1 and 2, all evidence of the remaining counts, which relate to the August 4, 2008 search of his home, should be suppressed because the officers had no probable cause to arrest him on August 4, 2008. Thus, he contends that the evidence resulting from his arrest was obtained in violation of the Fourth Amendment.

The government responds [Doc. 26] that the search warrant affidavit provides probable cause for the issuance of the search warrant. It also maintains that even if the defendant was acquitted of Counts 1 and 2, the search of the defendant's home on August 4, 2008, would still be legally valid and, thus, the evidence found in the home provided probable cause for his arrest.

## II. SUMMARY OF THE TESTIMONY

At the April 27, 2009 evidentiary hearing, the government called Officer Josh Shaffer of the Knoxville Police Department (KPD). Officer Shaffer testified that he was approached by Confidential Informant 1(CI-1), who told him that Marvin Harris was selling crack cocaine out of his residence in Mechanicsville. Officer Shaffer located the defendant's driver's license photograph from the database, and CI-1 identified the photograph as being the defendant. The CI-1 took Officer Shaffer to the house to which he was referring at 1211 Pickett Avenue, Knoxville, Tennessee.

Shaffer saw a white pickup truck parked in front of the residence. He subsequently checked the registration and learned that the truck was registered to the defendant. Shaffer believed that this information corroborated what CI-1 had told him. At that time, CI-1 had been cooperating with the police for over a year and had provided reliable information in the past.

Officer Shaffer stated that CI-1 conducted a controlled purchase of drugs at the defendant's house. Shaffer met CI-1 at another location, searched CI-1, and found no illegal contraband on CI-1's person. Shaffer gave CI-1 money and rode with CI-1 to a location near the defendant's residence. Shaffer could see the front of the defendant's house from the parked car. CI-1 walked directly to the defendant's house, and Shaffer saw him enter through the front door. After one and one-half minutes, CI-1 returned to the car and gave Shaffer a piece of a plastic baggie containing crack cocaine.

Officer Shaffer testified that Confidential Informant 3 (CI-3) began working with the police in late January 2008. Law enforcement debriefed CI-3 in a controlled environment and attempted to corroborate any of the information from CI-3 that they could. CI-3 had given the officers information in other drug investigations that they had corroborated. In early April, CI-3 infiltrated the defendant. CI-3 conducted a controlled purchase from the defendant on April 7, 2008. Shaffer searched CI-3 and CI-3's car and gave CI-3 money to purchase crack. He also equipped CI-3 with a digital recording device to wear during the transaction. Officers followed CI-3 to the defendant's house and conducted surveillance in the area. CI-3 parked near the defendant's house and walked to his front yard. CI-3 spoke with someone in the yard. When CI-3 returned, he told Shaffer that the defendant had gone to get some more narcotics. After some time elapsed, Shaffer searched CI-3 and the car again, then CI-3 returned to the defendant's residence. The defendant was

not back, but while CI-3 was there, the defendant returned in a brown Cadillac. After CI-3 returned from the defendant's residence, CI-3 gave Shaffer crack cocaine and the recording device. Shaffer searched CI-3 and the car a third time. CI-3 told Shaffer that the defendant had gone in the residence, came out again, and then sold CI-3 the crack.

Officer Shaffer stated that Confidential Informant 4 (CI-4) conducted controlled buys from the defendant on July 28 and 30, 2008, to establish that the defendant was still involved in the sale of crack. Shaffer had a "long track record" with CI-4 and had found CI-4 to be reliable in the past. Shaffer searched CI-4, gave CI-4 money, and told CI-4 to go to the defendant's residence and purchase crack. An undercover officer drove CI-4 to the block on which the defendant's house is located. Another officer conducting surveillance saw CI-4 walk to the defendant's house. CI-4 met with a black male outside, the male and CI-4 entered the house, and then came back out again. CI-4 returned to the undercover officer and gave him twenty rocks of crack tied up in the corners of baggies. On July 30, CI-4 made another controlled purchase of crack cocaine from the defendant. On that occasion, officers observed CI-4 enter through the defendant's front door. CI-4 returned a few minutes later with twenty crack rocks.

Officer Shaffer stated that everything contained in the affidavit was true. He said that the four confidential informants did not know about each other and that he did not tell them about the other controlled purchases.

On cross-examination, Officer Shaffer testified that all of the information corroborated from the debriefing of the confidential informants was not contained in the affidavit. He had only included the pertinent information about the defendant. Two of the informants had approached Shaffer with information about the defendant. CI-1 provided information in February

4

2008, and CI-4 provided information in April 2008. Shaffer did not show the informants a photographic lineup when they were identifying the defendant. Instead, he showed them the defendant's driver's license photograph. Thomasina Drew is the owner of 1211 Picket Avenue. Shaffer admitted that he did not know everyone who frequented the residence. The defendant used two vehicles that were parked at the residence, a white pickup truck and a brown Cadillac. The truck was registered to the defendant at that residence. The Cadillac was not registered to anyone living at the residence. Shaffer admitted that he had never seen the defendant make a drug sale at the residence.

Officer Shaffer stated that CI-1 and CI-3 were facing criminal charges. CI-2 and CI-4 were not facing criminal charges, but CI-2 had prior charges. He said that he did not perform drug testing on confidential informants. If an informant appeared to be "strung out," he would not use that informant. The informants involved in this case knew where the defendant's house was located, but Shaffer did not know how many times they had been there. He agreed that it would have been possible for them to plant drugs at the defendant's house. He said the majority of his contact with the confidential informants occurred over the telephone.

Officer Shaffer testified that he listened to the recordings of the controlled purchases conducted in April 2008. He could only hear the defendant and the informant in both conversations. He did not know if anyone else was in the house during the July purchases. The defendant's girlfriend Patricia Campbell was outside the house at that time. Shaffer stated that when the search warrant was executed, he found mail addressed to the defendant at 1211 Pickett Avenue in one of the bedrooms. Also in this bedroom, he found sandwich baggies with the corners cut off. Shaffer believed these baggies corroborated the defendant's involvement in the controlled buys. He also

5

found a set of digital scales with drug residue in the house.

### III. ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a home or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The defendant contends that his rights under the Fourth Amendment were violated by the issuance the search warrant for 1211 Picket Avenue. He argues that the affidavit fails to provide probable cause because the confidential informants were not reliable. He also maintains that if he is acquitted of Counts 1 and 2, relating to the drug transactions in April 2008, then there was no probable cause for his arrest on August 4, 2008, thus he concludes that the Court must suppress all evidence flowing from his arrest. The Court will examine the sufficiency of the probable cause to support both the search of the defendant's residence and his arrest.

#### A. Probable Cause to Search 1211 Pickett Avenue

The defendant argues that the affidavit in the present case fails to provide probable cause to support the issuance of a search warrant because the confidential informants were not reliable. Specifically, he argues that although the information provided in the affidavit from the informants reveals a great volume of drug activity occurring at his residence, the search of the residence revealed only one rock of crack cocaine. The government responds that the totality of the circumstances related in the affidavit provides sufficient probable cause because the affidavit reflects

6

that (1) four confidential informants had first-hand knowledge of the defendant selling drugs out of the residence, (2) the confidential informants made four controlled purchases of narcotics from the defendant at the residence, and (3) Officer Shaffer personally knew the four confidential informants and knew them to be accurate and reliable.

Initially, the Court notes that the defendant asks the Court to look beyond the search warrant affidavit to the evidence seized in the search of the residence to determine the reliability of the informants. Generally, in determining the sufficiency of the search warrant affidavit, the Court is "concerned only with the statements of fact contained in the affidavit." United States v. Hatcher, 473 F.2d 321, 323 (6th Cir. 1973); see also Whiteley v. Warden, 401 U.S. 560, 565 (1971). In reviewing the propriety of the search warrant, the Court considers "the evidence that the issuing magistrate had before him only 'to ensure that [he] ha[d] a substantial basis . . . for concluding that probable cause existed.'" United States v. Jones, 159 F.3d 969, 973 (6th Cir. 1998) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)) (alterations in original). In other words, the Court does not look beyond the four corners of the affidavit in assessing whether it provides probable cause.

Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). To make such a showing "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 244 n.13. Thus, the Supreme Court has observed that

> probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," Carroll v. United States, 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L. Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely

7

> true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176, 69 S. Ct. 1302, 1311, 93 L. Ed. 1879 (1949).

Texas v. Brown, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). The presence of probable cause to issue a search warrant is evaluated by looking at the totality of the circumstances. Gates, 462 U.S. at 238. The two-pronged Aguillar-Spinelli test cited by the defendant was rejected by the Supreme Court in favor of consideration of the totality of the circumstances. Id. at 230. Nevertheless, the reliability of a confidential informant remains an integral part of the probable cause analysis. See id. at 233 (holding that a confidential informants's reliability and basis of knowledge are "relevant considerations in the totality-of-the-circumstances analysis"); United States v. Allen, 211 F.3d 970, 972-73 (6th Cir. 2000).

The Court would also note that the issuing judge's determination that probable cause exists is entitled to "'great deference.'" Allen, 211 F.3d at 973 (quoting Gates, 462 U.S. at 236). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. Id.

In the present case, the portions of the affidavit relating the information from and the controlled purchases by the four confidential informants comprise three pages of the single-spaced affidavit. The Court will summarize the information contained therein: Officer Shaffer's investigation of the defendant began when CI-1 approached him in February 2008 with information that a man was selling drugs out of a house in the Mechanicsville area. CI-1 took Shaffer to 1211

8

Pickett Avenue. During surveillance of the residence, Shaffer saw a white pick-up truck parked in front on "numerous occasions." Shaffer checked the licence plate number and learned the truck was registered to the defendant at 1211 Pickett Avenue. Shaffer showed CI-1 the defendant's driver's license photograph, and CI-1 identified the defendant as the person whom CI-1 knew to be selling crack from 1211 Pickett Avenue. Shaffer checked the criminal records database and learned that the defendant had five prior convictions for selling cocaine. At the time, CI-1 had been providing information to the police for sixteen months. Shaffer had always found CI-1 to be accurate and reliable, and CI-1 had never provided inaccurate information. CI-1's information had led to the initiation of two other drug investigations that resulted in pending charges.

According to the affidavit, CI-1 conducted a controlled purchase from the defendant at 1211 Picket Avenue in February 2008. Before the transaction, CI-1 was searched and given money. Shaffer saw CI-1 go directly to the residence and enter it. Shaffer saw CI-1 exit the residence a short time later. CI-1 returned directly to law enforcement and gave them a crack rock packaged in a plastic baggie corner. CI-1 was searched and found to have no contraband or money. CI-1 said that upon entering 1211 Pickett Avenue, he met the defendant, who had a white plastic bottle containing numerous individually packaged crack rocks. CI-1 related that the defendant sold crack to CI-1 in exchange for the government money.

The affidavit relates that Shaffer also used CI-2 to make controlled purchases of crack from the defendant inside 1211 Pickett Avenue. CI-2 worked independently from the other confidential informants and was not aware of them or their interactions with the defendant. At the time of CI-2's involvement in the present investigation, CI-2 had been cooperating with the KPD in drug investigations for seven months, had always given reliable and accurate information, and had

9

never provided inaccurate information. CI-2 had given information leading to the initiation of numerous other drug investigation, to the execution of eight other search warrants, in which contraband was found, and to the arrest of thirteen people. CI-2 had conducted more than twenty controlled drug purchases.

According to the affidavit, CI-2 conducted an unnamed number of controlled purchases of crack from the defendant at 1211 Pickett Avenue. On these occasions, CI-2 was searched and given money. Shaffer and other officers saw CI-2 enter 1211 Pickett Avenue. Each time, CI-2 left the residence a short time later and returned directly to the officers. CI-2 gave the officers crack cocaine that CI-2 purchased from the defendant, whom he had previously identified from a photograph. A subsequent search of CI-2 revealed no money or drugs. CI-2 said that the defendant sold individually prepackaged rocks of crack, which the defendant kept in a white plastic bottle.

The affidavit states that Officer Shaffer used CI-3 to make a controlled purchase of crack cocaine from the defendant at 1211 Pickett Avenue. CI-3 had been cooperating with the KPD for three months. Information from CI-3 had always proven to be accurate and reliable and had never been false. CI-3 provided information leading to the initiations of two drug investigations and resulting in the execution of search warrants, yielding crack cocaine, currency, and the arrest of four people. CI-3 had also helped with two other drug investigations with pending charges and has provided other information. CI-3 had performed three controlled purchases of crack, including the one in this case, while wearing a body wire. On each occasion, Shaffer's review of the recording from the wire corroborated CI-3's account of the transaction.

According to the affidavit, CI-3 made a controlled purchase of crack from the

10

defendant at 1211 Pickett Avenue on April 7, 2008. CI-3 was searched and given a sum of money. Officers observed CI-3 going to the front yard of the residence. CI-3 met with a black male, whom CI-3 later identified as the defendant from a photograph. The defendant entered the house and then met with CI-3 on the front porch a short time later. The defendant went back in the house, and CI-3 left the residence. CI-3 returned to the officers, gave them back the money, and was debriefed. CI-3 said he met the defendant in the front yard and asked about buying crack. The defendant went inside and returned to the porch with a plastic bottle containing several individually wrapped white rocks. CI-3 told the defendant that CI-3 wanted to purchase more crack than the defendant had. The defendant told CI-3 to return in fifteen minutes because he had to "re-up." Then, the defendant went back into the house. A short time later, CI-3 was again searched and given money. While under surveillance, CI-3 returned to 1211 Pickett Avenue and met with a black female on the front porch. About ten minutes later, a brown Cadillac, which had been parked at the residence during the initial meeting, parked in front of the residence, and a black male got out. The surveilling officers had to change locations and, a short time later, saw CI-3 walking through the front yard. CI-3 returned to the officers and gave them crack cocaine and the unused portion of the money. CI-3 said that a black female had initially told CI-3 that "Marvin" was not there. CI-3 said the defendant arrived in the brown Cadillac and went inside the house, leaving CI-3 on the front porch. According to CI-3, a short time later, the defendant came out onto the front porch with crack cocaine and sold it to CI-3.

The affidavit relates that during the course of the investigation, Officer Shaffer was approached by CI-4 who said that two weeks earlier, CI-4 had witnessed a male sell crack cocaine at a residence. CI-4 pointed out the residence, which turned out to be 1211 Pickett Avenue. CI-4 was not aware of the other confidential informants or of the investigation of the defendant. CI-4 had

11

been cooperating with the KPD for a year, and information provided by CI-4 had always proven to be accurate and reliable. CI-4 had never given information that had turned out to be inaccurate. Information provided by CI-4 had led to three other drug investigations, the execution of three other search warrants, and the arrest of seven people.

The affidavit states that from February to August 2008, Officer Shaffer had conducted four separate controlled purchases using the confidential informants described in the affidavit. On each occasion, the confidential informant purchased crack from the defendant at or within 1211 Pickett Avenue. The affidavit relates that CI-2 had been inside 1211 Pickett Avenue within the last forty-eight hours, had seen the defendant offering crack for sale, and had purchased some of the crack. CI-2 brought the crack to Shaffer and told Shaffer that CI-2 saw the defendant with additional crack rocks packaged individually for sale.

The Court finds that the affidavit on its face shows that the confidential informants are reliable. An informant's veracity, reliability, and basis of knowledge are all relevant to the totality of the circumstances test but are not rigid categories. Allen, 211 F.2d at 972-73. In the present case, the affidavit states that the confidential informants had proven reliable in the past by providing information that led to a number of drug investigations, search warrants, and arrests. In cases involving a confidential informant, such as this one, more is required than a simple attestation to the reliability of the informant. United States v. Ferguson, 252 Fed. App'x. 714, 721 (6th Cir. 2007). Instead, the law requires

> that an affidavit demonstrate more than simply blind faith in the words of an affiant who claims his unnamed informant is reliable. For example, in Rodriguez-Suazo, even though the officer's confidential informant had provided prior tips that resulted in over three arrests and convictions, the

12

> police still conducted some (albeit minimal) corroboration of the tip in question. 346 F.3d at 646-47. Similarly, in United States v. May, 399 F.3d 817 (6th Cir. 2005), we held that the tip of an unnamed confidential informant can support a finding of probable cause when "the issuing judge had before him 'additional evidence [that] buttressed the informant's information.'" 399 F.3d at 824 (quoting United States v. Williams, 224 F.3d 530, 532 (6th Cir. 2000)). One piece of additional evidence that the May court considered was that the informant had provided reliable information in the past, but we also considered the independent corroboration by the police. See also United States v. Williams, 224 F.3d 530, 532-33 (6th Cir. 2000) (finding probable cause from an affidavit that relied on a confidential informant who had previously provided information leading to arrests and convictions, but where the affiant also mentioned his own personal knowledge regarding the sale of drugs at the location to be searched and the affiant separately informed the issuing judge about police surveillance of the residence), cert. denied, 531 U.S. 1095, 121 S. Ct. 821, 148 L. Ed. 2d 704 (2001).

Id.

In the instant case, the affiant gives several bases for the informants' reliability: (1) The affiant's attestation that the informants have proven reliable in the past, (2) the affiant's corroboration of 1211 Picket Avenue being linked to the defendant through his check of the registration of the white pickup truck, and (3) the conducting of four controlled purchases of drugs at the residence, at least one of which was recorded and the recording reviewed by the affiant. The independent police corroboration needed in the face of a weak showing as to the veracity of the confidential informant may be established by a police-monitored controlled purchase. United States v. Coffee, 434 F.3d 887, 894 (6th Cir. 2006) (holding that the officer's "statements that he set up the controlled buy and took necessary precautions before and after the orchestrated purchase adequately

13

corroborated the CI's information, and thus, provided sufficient probable cause for the issuance of the search warrant"). In this respect, the Court of Appeals for the Sixth Circuit has found sufficient police corroboration of an informant's reliability when officers conducted two controlled purchases even though the informant did not wear a wire during the purchases, United States v. Hawkins, No. 07-3634, 2008 WL 2178104, at *5 (6th Cir. May 23, 2008), and when officers conducted only one controlled purchase, which they monitored via a listening device, United States v. Jackson, 470 F.3d 299, 307 (6th Cir. 2006). See also United States v. Henry, No. 07-5867, 2008 WL 4691789, at *3 (6th Cir. Oct. 24, 2008) (holding single controlled purchase sufficient to corroborate informant's reliability). In the instant case, the affiant set up four controlled purchases, one of which was recorded simultaneously and then subsequently reviewed by the affiant. The Court finds that the four controlled purchases adequately corroborate the informants' reliability. Accordingly, the affidavit provided sufficient probable cause for the issuance of the search warrant.

### B. Probable Cause to Arrest the Defendant

The defendant contends [Doc. 22] that without the evidence of the controlled buys relating to Counts 1 and 2, there would have been insufficient probable cause to arrest him on August 4, 2008. Thus, he argues that if he were to be acquitted of Counts 1 and 2, the evidence relating to the remaining charges, that stem from the execution of the search warrant on August 4, 2008, should be suppressed. The government responds [Doc. 26] that even if the defendant were acquitted of Counts 1 and 2, the search warrant for the defendant's residence was still valid based upon the probable cause that existed at the time of its issuance. Accordingly, the defendant's arrest, stemming from the evidence seized in the August 4, 2008 search of his residence, was based upon

14

probable cause.

The Court agrees with the government that the defendant's arrest was not illegal. The Court takes the defendant to be arguing in essence that if he were acquitted of Counts 1 and 2, then there would be insufficient evidence of the April 2008 controlled purchase[1] for it to be included in the search warrant. The defendant then contends that if the April 2008 controlled purchase was stricken from the search warrant affidavit, there would be insufficient probable cause to issue the search warrant; and without the evidence seized in the search, the officers would have had no probable cause to arrest him. The Court has already found above that the affidavit provided probable cause to issue the search warrant for the search of the defendant's home on August 4, 2008. As noted above, the existence of such probable cause is derived from looking at the information available to the issuing judge, not from anything that happens after the warrant issued, including whether a jury finds beyond a reasonable doubt that the evidence is sufficient to convict the defendant of one of the controlled purchases detailed in the affidavit. Moreover, even if the April 2008 controlled purchase was omitted from the search warrant affidavit, the Court finds that the affidavit still provides probable cause for issuing the search warrant based upon the remaining controlled purchases in February and July 2008.

The evidence seized in the execution of the search warrant provided probable cause for the defendant's arrest. According to the Property Inventory Report attached to the defendant's suppression motion, officers found one rock believed to be crack cocaine, a shotgun, a pistol, and ammunition. The affidavit relates that the defendant has five prior felony drug convictions.

---

[1] Although the defendant premises his argument upon being acquitted of both Counts 1 and 2, which charge the distribution of crack cocaine on April 7 and 9, 2008, respectively, the Court notes that the affidavit only references a single controlled purchase in April 2008.

15

Accordingly, at the time of the execution of the search warrant, law enforcement had probable cause to arrest the defendant for drug possession and for being a felon in possession of firearms and ammunition. The Court recommends that the defendant's suppression motion [Doc. 22] arguing the absence of probable cause for his August 4, 2008 arrest be denied.

## IV. CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the Court finds no basis to suppress the evidence resulting from the search of the defendant's residence. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motions to Suppress [**Docs. 22 and 24**] be **DENIED**.[2]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).